**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

JAMES JONES,

    Plaintiff,

*v*.                                          CASE NO. 08-CV-10325

COMMISSIONER OF                DISTRICT JUDGE THOMAS LUDINGTON
SOCIAL SECURITY,                MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance benefits and supplemental security income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Dkt. 10, 11.)

Plaintiff was 50 years of age at the time of the most recent administrative hearing. (Transcript, Dkt. 4 at 437.) Plaintiff's relevant employment history includes work as a direct care worker, truck driver and maintenance worker. (Tr. at 73.)

Plaintiff filed the instant claims on July 8, 2003, and July 18, 2003, alleging that he became unable to work on January 23, 2001. (Tr. at 50-52, 314-26.) The claim was denied at the initial administrative stages. (Tr. at 35, 327.) In denying Plaintiff's claims, the Defendant Commissioner considered back problems and hydrocele as possible bases of disability. (*Id.*)

On September 12, 2005, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Regina Sobrino, who considered the case *de novo*. In a decision dated October 21, 2005, the ALJ found that Plaintiff was not disabled. (Tr. at 18-27.) Plaintiff requested a review of this decision on November 17, 2005. (Tr. at 14.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on November 20, 2007, when, after the review of additional exhibits[2] (Tr. at 336-432), the Appeals Council denied Plaintiff's request for review.

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v.*

(Tr. at 6-8.) On January 23, 2008, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

**B.     Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509

---

*Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

(6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference

from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only

for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that she is precluded from performing [his]

6

past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff received treatment at the Hamilton Family Health Center, the Hamilton Community Health Network, and the DOT Caring Center in 2003 and 2004 for depression. (Tr. 217-58.) In addition, Plaintiff also participated in rehabilitative physical therapy at the Sacred Heart Rehabilitation Center for low back pain and carpal tunnel syndrome. (Tr. at 258-313.) After an examination conducted by Dr. Matthew P. Dickson, Ph.D., in September 2002 at the request of the Michigan Disability Determination Service ("DDS"), Dr. Dickson determined that Plaintiff exhibited a "Psychotic Disorder Not Otherwise Specified," "Dysthymic Disorder," "No diagnosis on Axis II," "Back, hip and other medical problems," "Financial [and] Employment" issues and a "Current GAF [of] 51." (Tr. at 189.)

An EMG performed in March 2003 revealed "evidence of right median dysfunction at the wrist, carpal tunnel syndrome, sensory, demyelinating and axonal and mild in nature" and "no evidence of cervical radiculopathy, brachial plexopathy, diffuse peripheral neuropathy or any other mononeuropathy of both upper extremities." (Tr. at 230.) As noted by one of Plaintiff's treating physicians, Dr. Tarakji, during the same time period, an "MRI study of the LS spine showed no

focal disk or canal stenosis, but diffuse bulging at the level of L5-S1 with some arthritic changes at the same level." (Tr. at 231.)

In September 2003, Plaintiff underwent a physical examination conducted at the request of the DDS by Samiullah H. Sayyid, M.D., who concluded that Plaintiff had "[s]pondylosis as well as bulging disc of L2-L3 and L5-S1[,] [d]epression[,] [f]all on the back in the past[,] [h]istory of heavy object hitting the top of the head in the past with cyst formation[,] [and] [c]arpal tunnel syndrome." (Tr. at 179.)

After a review of Plaintiff's medical records, a DDS physician concluded that Plaintiff is moderately limited in maintaining social functioning and in maintaining concentration, persistence, and pace. (Tr. at 200.) The DDS physician also concluded that Plaintiff is moderately limited in his ability to understand and remember detailed instructions, to carry out detailed instructions, and to maintain attention and concentration for extended periods. (Tr. at 204.) In addition, Plaintiff was found to be moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors and to respond appropriately to changes in the work setting. (Tr. at 205.) The handwritten comments indicate that the above limitations are due to "psychotic disorder" and "dysthemia" but ultimately conclude that Plaintiff "can do unskilled work." (Tr. at 206.)

A physical RFC was also performed on Plaintiff indicating that Plaintiff could lift up to 20 pounds occasionally, up to 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, sit (with normal breaks) for a total of about 6 hours in an 8-hour workday if allowed to periodically alternate between sitting and standing to relieve pain and discomfort due to parasthesia, and that Plaintiff is limited in his lower extremities. (Tr. at 209.) Plaintiff also exhibited occasional postural limitations such as balancing, stooping, kneeling, and crawling, and

he can never climb. (Tr. at 210.) There were no manipulative, visual, communicative, or environmental limitations noted other than hazards. (Tr. at 211-12.) There was no treating or examining source statement on file to compare to the findings made in the assessment. (Tr. at 214.)

E.   **ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since January 23, 2001. (Tr. at 26.) At step two, the ALJ found that Plaintiff's degenerative disc disease, carpal tunnel syndrome, history of hernia repair, depression and history of substance abuse were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform his previous work as a direct care worker, truck driver or maintenance worker. (*Id.*) At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the regional and national economy. (Tr. at 27.)

Using the Commissioner's grid rules as a guide, the ALJ found that Plaintiff could perform work as an inspector, packer, janitor, food preparation worker, and sorter. Thus, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act. (Tr. at 27.)

F.   **Analysis and Conclusions**

1.   **Legal Standards**

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of light work. (Tr. at 27.) Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

## 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

More specifically, the legal argument advanced by Plaintiff's counsel is that the ALJ erred by forming an inaccurate hypothetical that did not accurately portray Plaintiff's impairments. (Dkt. 10 at 6-15.) Plaintiff contends that although the hypothetical contained a limitation that there would be "no dealing with the general public" because of Plaintiff's moderate "difficulties in maintaining social functioning," Plaintiff's limitations regarding his "ability to maintain attention and concentration for extended periods" and moderate "difficulties in maintaining concentration, persistence, or pace" were not addressed in the hypothetical. (Dkt. 10 at 11.)

The hypothetical posed to the vocational expert ("VE") asked the VE to assume:

a person who cannot lift, carry, push or pull more than 10 pounds frequently and 20 pounds occasionally. Assume someone who can stand and walk about six hours in an eight hour day and sit for up to eight hours in an eight hour workday, but assume that the person should be able to alternate sitting and standing when they want to. Assume a person who cannot climb ladders, ropes, or scaffolds, can occasionally climb stairs, can rarely stoop, should not be required to kneel, can rarely crouch, should not crawl. Assume someone who should not do forceful gripping, grasping, pinching, twisting, or squeezing. Assume someone who is limited to frequent handling, fingering, and feeling, and the person should be able to wear wrist braces while working, such as the one that Mr. Jones has here. And should be able to wear a back brace while working. The person should not do overhead reaching, should not be exposed to hazards, should not need to operate foot or leg controls. Assume a person who's limited to performing work that's simple, routine, and low stress. Assume a person who is able to tolerate superficial contact with coworkers and supervisors, such as exchange of information, but not including jobs that require working in tandem with someone else to complete the work task. The person should not be required to deal with the general public.

(Tr. at 454-55.) In addition, the jobs the VE considered did not involve exposure to vibrations. (Tr. at 456.) In response, the VE testified that, assuming a sixth grade reading level, 50% of the clerk positions would be removed, taking the number available to 500, but no other jobs would be affected. (Tr. at 457.) Plaintiff's counsel asked the VE for "the general rule of thumb as far as percent of time somebody needs to stay on task or focus to concentrate," to which the VE responded, "85 percent." (Tr. at 458.)

I find *Infantado v. Astrue*, 263 Fed. App'x 469, 477 (6th Cir. 2008), instructive. In *Infantado,* the treating psychiatrist had noted "moderate" limitations in the "plaintiff's ability to understand, remember, and carry out detailed instructions; in her ability to maintain attention and concentration for extended periods; and in her ability to set realistic goals and make plans independently of others." *Id.* "Yet, despite these limitations, [the psychiatrist] noted that plaintiff 'does [light] household chores, is involved with her child's activities, e.g., builds models, and is interested in gardening, fishing.'" *Id.* Thus, the psychiatrist "concluded that plaintiff 'appears to

11

be capable of performing simple tasks on a sustained basis.'" *Id.* The court noted that the "ALJ was not oblivious to the mental RFC assessment report, but expressly noted [the psychiatrist's] limitations in his decision. *Id.* The court further noted that the hypothetical posed to the VE "could have been more complete" by expressly referring to these limitations, but did not find that the hypothetical "inaccurately portrayed the plaintiff's substantial limitations." *Id.* Accordingly, the court concluded that the ALJ's conclusion that the plaintiff retains the ability to perform unskilled sedentary work "were not inconsistent with [the psychiatrist's] opinion regarding plaintiff's functional limitations and is supported by substantial evidence." *Id.*

I suggest that the same is true in the instant case. Here, the ALJ expressly noted that Plaintiff has "moderately limited functioning in the area of concentration, persistence and pace," as indicated by his treating psychiatrist, Dr. Gotlib. (Tr. at 24.) In addition, as noted by the ALJ, during a consultative examination, Plaintiff was "cooperative and socially appropriate," Plaintiff displayed an "affect" that was "appropriate to mood," and he "did not require assistance in scheduling and keeping appointments." (Tr. at 24 (ALJ), 204-06 (RFC).) The consultative psychologist concluded that Plaintiff was able to perform unskilled work. (Tr. at 24 (ALJ), 206 (RFC).) Plaintiff reported his daily activities include washing some dishes, checking mail, watching television and eating. (Tr. at 92-93 (April of 2004), 104-06 (August of 2005).) I suggest that, as in *Infantado*, although the words "moderate limitations in concentration, persistence and pace" were not expressly mentioned, the ALJ was not oblivious to those limitations in crafting the very detailed hypothetical that assumed Plaintiff could do only simple, routine, low stress work and work where he would experience superficial contact but did not require working in tandem with someone else nor to be in contact with the general public. (Tr. at 455.) I therefore suggest that the ALJ's hypothetical is supported by substantial evidence. *Sohm v. Astrue*, No. 3:07CV257-J,

2008 WL 2437541, at *3 (W.D. Ky. June 13, 2008) (hypothetical supported by substantial evidence where moderate limitation in abilities to maintain concentration, persistence and pace were not expressly mentioned but where, "[i]nstead of enumerating particular ways in which the limitations might affect [plaintiff], the ALJ simply assumed the inability to perform in certain ways . . . [such as] assum[ing] that [plaintiff] could do only 'simple, repetitive work.'")[3]

I further suggest that the ALJ's findings accurately portrayed Plaintiff's individual physical impairments in harmony with the objective record medical evidence as presented by the treating and examining physicians, as well as the daily activities described by Plaintiff himself. (Tr. at 92-93, 104-06.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is well within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474

---

[3] I further note that moderate limitations in the ability to concentrate and limitations to simple tasks have been considered, without analysis, as coterminous. *Middleton v. Astrue*, No. 07-387-GWU, 2008 WL 3914925, at *2 (E.D. Ky. Aug. 20, 2008)(hypothetical presumed claimant "limited to simple tasks with moderate limitations in carrying out detailed instructions, maintaining extended attention and concentration"); *Branham v. Astrue*, No. 07-158-GWU, 2008 WL 2325197, at *4 (E.D. Ky. June 4, 2008)(moderately limited ability to carry out detailed instructions, maintain attention, and concentration for extended time periods consistent with limited ability to do simple tasks in hypothetical); *Bowling v. Astrue*, No. 6:07-309-DCR, 2008 WL 1868023, at *7 (E.D. Ky. Apr. 24, 2008)(moderate versus marked limitations in ability to maintain attention and concentration for extended periods consistent with ability to carry out simple tasks in hypothetical).

U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

|  | s/ *Charles E Binder* |
|---|---|
| Dated: October 2, 2008 | CHARLES E. BINDER<br>United States Magistrate Judge |

### **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Judith E. Levy, Mikel E. Lupisella, and the Commissioner of Social Security, and served on U.S. District Judge Ludington in the traditional manner.

Date: October 2, 2008        By     s/Patricia T. Morris
                                                                Law Clerk to Magistrate Judge Binder